UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. Case 1:20-cv-21091-Civ-COOKE/GOODMAN

FLORIDA FAIR HOUSING ALLIANCE, INC.,

    Plaintiff,

vs.

JAPANESE GARDEN MOBILE
ESTATES, INC., d/b/a
COURTYARDS OF SOUTH TAMPA,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, ALTERNATIVE MOTION TO TRANSFER VENUE, AND INCORPORATED MEMORANDUM OF LAW

    Defendant, Japanese Garden Mobile Estates, Inc. ("Japanese Garden"), by counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(3), and 12(b)(6), and 28 U.S.C. § 1404, respectfully files this Motion to Dismiss Plaintiff's Complaint and/or Transfer Venue under 28 U.S.C. § 1404. The grounds for this motion are set forth more fully in the memorandum of law below which is incorporated by reference herein.

## MEMORANDUM OF LAW

    Defendant Japanese Garden, by counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Complaint, or in the alternative, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of Florida. As grounds therefor, Defendant states as follows:

## BACKGROUND

    This is an action for disparate impact housing discrimination under the Federal Fair Housing Act. Plaintiff operates a non-profit housing advocate organization out of Miami-Dade County, Florida. [Complaint, ¶ 4]. Defendant owns and operates an apartment complex called the Courtyards of South Tampa located in Tampa, Florida. [Complaint, ¶ 6]. Plaintiff alleges that one of its employees pretended to be a potential renter and called an

employee of the apartment complex to test the apartment's responses to questions about availability. [Complaint, ¶ 7]. Plaintiff alleges that its tester asked something about the apartment's background check requirements and the apartment's employee responded by saying something the tester interpreted as a policy which excludes anyone who has a felony conviction on his or her record. [Complaint, ¶ 8].

The Complaint should be dismissed because:

(I) it was filed in the improper venue because the Defendant does not reside in the Southern District nor did the cause of action arise here; and

(II) the Complaint fails to state a cause of action as a matter of law because an alleged housing policy prohibiting all convicted felons alone is not actionable without evidence that the policy has a disparate impact. In addition, the Complaint does not plead sufficient facts on what Defendant's background check policy is as required to make a plausible claim that it is discriminatory.

## ARGUMENT

I.  **The Complaint Should Be Dismissed for Improper Venue Under Rule 12(b)(3).**

Plaintiff alleges that venue is proper in this District. [Complaint, ¶ 2]. Plaintiff claims "the subject property is located in this district" then immediately contradicts that claim admitting that subject property is located in "Tampa, FL," outside of the district. [Complaint, ¶¶ 2 ; 6]. The allegations even if assumed true do not support venue in this District and the Complaint should be dismissed.

**A. The Venue of Defendant's Residence Lies in the Middle District of Florida.**

For federal question cases, venue is proper in the judicial district where all the defendants reside or the district in which the claim arose. *See*, 28 U.S.C.A. § 1391(b) (West 2019). In states with multiple districts, a corporate defendant may also be deemed to reside in any district of the state with which Defendant has sufficient contacts. 28 U.S.C.A. § 1391(d) (West 2019).

Plaintiff alleges that Defendant's principal place of business is in "Clearwater, Florida" which lies in the Middle District of Florida. [Complaint, ¶ 4]. Defendant's business involves owning and managing residential and commercial real properties. [Affidavit of Japanese Garden President (attached as "Exhibit A")]. Japanese Garden's primary place of

business is limited to the Tampa-Bay area, including Hillsborough and Pinellas Counties. [Exhibit A].

Japanese Garden owns and manages the Courtyards of South Tampa apartment complex located at 3814 W Euclid Ave, Tampa, FL 33629. [Exhibit A]. Japanese Garden's officers and employees who directly participate in the operation and leasing of the Courtyards of South Tampa or have direct knowledge about that property all reside locally in the Tampa-Bay area. [Exhibit A]. Any of Japanese Garden's records relating to the Courtyards of South Tampa would be located in the Tampa-Bay area. [Exhibit A].

Japanese Garden's offices are located in the Tampa-Bay area. [Exhibit A]. Japanese Garden does have one office located in Englewood, Florida, but that office is not involved with the operation or records of the Courtyards of South Tampa. [Exhibit A].

Japanese Garden does not have any substantial business ties to Miami-Dade County. [Exhibit A]. Japanese Garden has no offices or employees in Miami-Dade County. [Exhibit A]. Nothing relating to the operation or leasing of Courtyards of South Tampa is done in Miami-Dade County. [Exhibit A]. Japanese Garden does not send advertisements directed to residents of Miami-Dade County, nor does it directly solicit potential tenants known to be living in Miami-Dade County. [Exhibit A].

The district court must accept the jurisdictional facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996). The factual contradictions of the Complaint and Defendant's affidavit attached hereto are sufficient to controvert venue.

Therefore, Defendant is not a resident of the Southern District of Florida and venue would only be proper in this District if the cause of action arose in this District.

**B. Plaintiff's Claim Arose in the Middle District of Florida.**

Venue may also lie in the forum in which the cause of action arose. *See*, 28 U.S.C.A. § 1391(b) (West 2019). Plaintiff 'cold-called' Defendant's employee working at a residential rental property in Tampa, Florida. [Complaint, ¶ 6]. Plaintiff was pretending to be a person inquiring about renting a unit at the Courtyards of South Tampa property to 'test' how Defendant's employee responded to a question about felonies. [Complaint, ¶¶ 6-8]. The Complaint concludes without factual support that Defendant's conduct occurred in the Southern District. [Complaint, ¶ 2].

There are no plausible facts alleged which tie Defendant or its conduct to the Southern District. Plaintiff alleges that it is headquartered in Miami-Dade, but Plaintiff's place of residency is not relevant to venue. *See*, 28 U.S.C.A. § 1391(b) (West 2019). In the context of Fair Housing claims specifically, Plaintiff's current place of residency does not create venue there. *See, Hicks v. Makaha Valley Plantation Homeowners Ass'n*, No. CIV. NO. 14-00254 HG, 2015 WL 328311, at *1 (D. Haw. Jan. 26, 2015) (denying venue in plaintiff's home state of Georgia for alleged housing discrimination relating to a property in Hawaii). Per the Complaint, Plaintiff's tester in Miami-Dade made an unsolicited phone call out of the blue to Defendant in Tampa. Defendant made no directed contact or reached out to this forum to support an argument that Defendant should be forced to litigate here.

Therefore, venue is not proper in this district and this action should be dismissed because Defendant does not reside in this forum nor did the cause of action arise here.

### C. **If Not Dismissed, This Action Should Be Transferred to the Middle District of Florida.**

If this case is not dismissed for the foregoing reasons, Defendant requests that this Court transfer venue to the U.S. District Court for the Middle District of Florida. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (West 2019). The Court should exercise its power to transfer a case in order to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.

Defendant's housing which Plaintiff was allegedly denied from is located at 3814 W Euclid Ave, Tampa, FL 33629 (the "Complex"). [Complaint, ¶ 6]. Defendant's officers, agents and employees who may have knowledge of the Complex's fair housing practices and policies and the events alleged in the Complaint all reside locally in the areas surrounding the Complex. [Exhibit A]. Defendant's principle place of business is located in the Tampa Bay area. [Complaint, ¶ 4]. Defendant's counsel is located in the area Tampa area surrounding the Complex.

Requiring Defendant to litigate this case in the Southern District would be inconvenient, burdensome, expensive and prejudicial to Defendant, its counsel, and any potential witnesses who would have to travel approximately 300 miles to the current venue.

Conversely, an order transferring venue to the Middle District of Florida would not inconvenience or prejudice Plaintiff because it reached out to Defendant unsolicited about the prospect of moving to, or living in, the Tampa area. The Complaint does not reflect that any event, individual, or witness is located in the Southern District. The location of Plaintiff's headquarters is this case's only tie to the Southern District. [Complaint, ¶ 3].

II. **The Complaint Fails to State a Claim on Which Relief Can Be Granted.**

Even if the Complaint were not dismissed for improper venue, it would nevertheless warrant dismissal under Rule 12(b)(6) because the allegations fail to state a claim upon which relief may be granted. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," plausible facts must be plead to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A. **The Existence of a Race-Neutral Policy Prohibiting Convicted Felons Without Evidence that the Policy Has a Disparate Impact Fails On Its Face.**

Plaintiff's allegations, even if true, would not constitute legally actionable discrimination or a violation of the Fair Housing Act. Courts have recognized that background checks may legitimately serve as a basis for denying a rental application. *Bida v. Shuster Mgmt. LLC*, CV 18-10975-KM-JBC, 2019 WL 1198960, at *4 (D.N.J. Mar. 14, 2019). The FHA does not prohibit landlords from denying a person's rental application based on his criminal record. *Evans v. UDR, Inc.*, 644 F. Supp. 2d 675, 681 (E.D.N.C. 2009).

1. **HUD Guidance Does Not Impose Liability For Automatic Background Denial Policies Limited to Certain Types of Convictions.**

HUD Guidance discourages a "policy or practice" imposing a "blanket prohibition on any person with **any conviction**" because it may have a disparate impact. [Complaint, Ex. C ("HUD Guidance"[1]) at p. 6]. Plaintiff stretches and misconstrues this statement to conclude that any blanket prohibition on a certain **'type of conviction'** has a disparate impact *per se*.

The distinction between a blanket denial policy against '**any conviction**' versus '**certain types of convictions**' is determinative to this disparate impact claim. Both before and after the distribution of the HUD Guidance, Courts have clarified that the former may

---

[1] U.S. Department of Housing and Urban Development ("HUD") guidance entitled "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" (April 4, 2016).

support a claim for disparate impact discrimination, whereas the latter does not. The HUD Guidance states that blanket denials for "any conviction" are prohibited and cites to the Eighth Circuit's decision in *Green*[2] to support that proposition. [HUD Guidance, p. 6, fn. 30]. *Green* held that a blanket denial of applicants convicted of any crime, other than a minor traffic offense, was overly broad and could have disparate impact.

After *Green* was decided in 1975, some, including Plaintiff Florida Fair Housing Alliance, have misconstrued *Green* to mean that any policy which excludes applicants on the basis of a conviction is prohibited. This is not the law in Florida:

> While Green could be limited to those situations where the linkage between the employer's business needs and the conviction policy is minimal, the case may also be broadly read to bar all employment conviction policies. With all due respect to the members of the Eighth Circuit, their holding is ill founded.

*E.E.O.C. v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 752 (S.D. Fla. 1989).

After the HUD Guidance was written, and in an effort to resolve the confusion stemming from its decision in *Green*, the Eighth Circuit clarified that a policy of blanket denials for certain types of convictions is permissible. *See*, *Eggers v. Wells Fargo Bank, N.A.*, 899 F.3d 629, 634–35 (8th Cir. 2018) (noting that a blanket denial for theft convictions could be permissible).

Plaintiff concludes that as a matter of law and pursuant to the HUD Guidance, a blanket prohibition regarding an applicant's "felony" criminal history "is unlawful under the Fair Housing Act." [Complaint, ¶¶ 9, 17, 19, 28, 29]. Plaintiff's statement of the law is incorrect and misleading to the Court.

First, failure to follow agency guidance is not unlawful. *See*, *Hardie v. Nat'l Collegiate Athletic Ass'n*, 876 F.3d 312, 323 (9th Cir. 2017). Agency guidance is not law and is not afforded full deference by the Courts. *See*, *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 858 (11th Cir. 2009).

Second, HUD's Guidance states that "a discriminatory **effect** resulting" from a blanket denial policy violates the Act. [HUD Guidance, p. 2, emphasis added]. It is the *effect* not the *policy* which unlawful. In other words, a blanket denial policy is not unlawful if it does not have a discriminatory effect. The Complaint fails to connect the dots and set forth

---

[2] *Green v. Missouri Pac. R. Co.*, 523 F.2d 1290 (8th Cir. 1975)

the necessary causal link between a policy against convicted felons and a discriminatory effect. *See, Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523 (2015).

Finally, the HUD Guidance must be read in context with the law upon which it is based. To support its advice against denying all applicants with a criminal history, HUD cites to *El v. SEPTA* which explains that "[i]f a bright-line policy can distinguish between individual applicants that do and do not pose an unacceptable level of risk" then such a policy is permissible. *El v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 245 (3d Cir. 2007).

The Complaint concludes that, as a matter of law, a bright-line policy excluding convicted felons must be discriminatory. [Complaint, ₱ 19]. This statement of the law attempts to mislead the Court. This jurisdiction does not prohibit blanket background denials limited to more serious offenses because it may serve a legitimate non-discriminatory interest:

> A past criminal record affords no basis to predict that a given person will commit a future crime. But the evidence indicates that a group of persons who have been convicted of serious crimes will have a higher incidence of future criminal conduct than those who have never been convicted.

*E.E.O.C. v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 753 (S.D. Fla. 1989).

In short, the Complaint is dependent on the alleged legal premise that all bright-line background check policies, including those excluding only felons, are unlawful. This is an incorrect and misleading characterization of the current state of the law. Automatic denial policies limited to more serious offenses, such as felonies, may be permissible. *See, e.g.*, *Carolina Freight Carriers Corp.*, 723 F. Supp. 734; *Hardie*, 876 F.3d 312.

### 2. Statistical Data Showing a Disparate Impact is an Element of this Cause of Action But It Is Absent from the Complaint.

The Complaint concludes that Defendant has discriminated against minorities by having a race-neutral policy against convicted felons. Plaintiff's basis for this conclusion is that "criminal history-based restrictions on access to housing are likely disproportionately to burden African Americans and Hispanics.'" [Complaint, ₱ 15].

"Racial imbalance ... does not, without more, establish a prima facie case of disparate impact", this protects defendants from being held liable for racial disparities they

did not create. *Texas v. Inclusive Communities Project,* 135 S. Ct. at 2523. "If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability." *Id.*

Any inference that all blanket denial background policies have a disparate impact has been called into question because of the Supreme Court's addition of "safeguards" which require a "robust causality requirement" to support a disparate impact claim. *Sw. Fair Hous. Council Inc. v. Maricopa Domestic Water Improvement Dist.*, No. CV-17-01743-PHX-DWL, 2020 WL 871249, at *7 (D. Ariz. Feb. 21, 2020). "Without adequate safeguards at the prima facie stage, disparate-impact liability might cause race to be used and considered in a pervasive way and 'would almost inexorably lead' governmental or private entities to use 'numerical quotas,' and serious constitutional questions then could arise." *Texas v. Inclusive Communities Project,* 135 S. Ct. at 2523. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.*

The Complaint is 'dead on arrival' because it fails to allege statistical data showing that minorities are disproportionately convicted of felonies or data showing that the alleged policy excluding convicted felons from the subject housing causes a disparate impact on minorities. There must be statistical evidence of *both* a racial disparity *and* data showing the specific policy in question causes a disparate impact. *Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo, Fla.*, 759 F. App'x 828, 836 (11th Cir. 2018); *Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 667 (N.D. Tex. 2019) (granting motion to dismiss disparate impact claim).

The Complaint 'piggy-backs' on data from the HUD Guidance which states that "racial and ethnic minorities face disproportionately high rates of arrest and incarceration." [HUD Guidance, p. 1-2]. While the HUD Guidance discusses arrest and incarceration data, the glaring omission from the Complaint is any statistical support for the alleged disparate impact of a policy excluding only convicted felons. Moreover, the data the Complaint relies upon is from nationwide arrest and incarceration statistics.

According to the HUD Guidance, "[a]dditional evidence, such as applicant data, tenant files, census demographic data and localized criminal justice data, may be relevant in determining whether local statistics are consistent with national statistics and whether there

is reasonable cause to believe that the challenged policy or practice causes a disparate impact." There is no data about the racial makeup of convicted felons in the actual or potential applicant pool for the subject property in South Tampa, Florida.

The Complaint relies on a "bald assumption" with "no comparative data at all" about alleged disparate impacts of a policy against convicted felons, which is not discussed at all in the HUD Guidance offered as evidence. *See*, *Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo, Fla.*, 759 F. App'x 828, 835 (11th Cir. 2018).

Rather than sufficiently allege a causal link between the policy and statistical disparities as required by the Supreme Court's 'robust causation standard,' Plaintiff repeatedly argues that the policy is discriminatory because the individuals affected by it are minorities. *See*, *Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 668 (N.D. Tex. 2019). Rejecting a claim similar to the one made in this case, Senior District Judge Jose A. Gonzalez, Jr. stated: "plaintiff's position that minorities should be held to lower standards is an insult to millions of honest Hispanics." *E.E.O.C. v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 752 (S.D. Fla. 1989).

### 3. Failure to Conduct an Individualized Background Check Alone Does Not Support a Disparate Impact Claim.

Plaintiff also implies that any background check which does not follow HUD's recommendation for an individualized assessment of an applicant's criminal history constitutes actional discrimination. [Complaint, ¶ 18]. Because the HUD Guidelines are not published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment, they do not deserve this Court's full deference. *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 858 (11th Cir. 2009).

The HUD Guidance explains that a policy which implements an "individualized assessment" of criminal record "is likely to have a less discriminatory effect". [HUD Guidance at p. 7]. HUD's opinion cannot be stretched to conclude that every policy which fails to conduct an individualized assessment is discriminatory. As stated above, any particular race-neutral policy may only be discriminatory when shown statistically to have caused a disparate impact on a protected class.

Similar to the HUD Guidance, EEOC guidelines also advise employers to conduct an individualized assessment of criminal background to avoid a disparate impact on

minorities. The Court in *Hardie* concluded that the failure to conduct an individualized assessment under government guidelines, alone, does not constitute discrimination, especially without data showing that conducting an individualized assessment reduces disparate impact. *Hardie v. Nat'l Collegiate Athletic Ass'n*, 876 F.3d 312, 323 (9th Cir. 2017).

In *Hardie*, the Court held that the NCAA's automatic denial for applicants with a felony conviction was permissible to protect the NCAA's members. The Court considered that "even after many years, people convicted of violent crimes 'are at least somewhat more likely than members of the general population to commit a future violent act.'" *Hardie*, 876 F.3d at 322.

In this case, the claim is not premised upon statistical evidence that the specific policy in question against convicted felons has a disparate impact. It is solely based on Defendant's alleged failure to follow HUD's recommendation to conduct an individualized assessment of an applicant's background. These allegations, even if true, do not support a claim for disparate impact discrimination.

For all the foregoing reasons, the allegations of the Complaint fail to state a cause of action as a matter of law. The only allegation offered as evidence of a disparate impact is the alleged "blanket prohibition regarding an applicant's felony criminal history." Unlike a blanket denial for all persons with a criminal history, an alleged policy excluding convicted felons alone cannot form the basis for disparate impact claim as a matter of law. No matter how this claim is repackaged, the entire premise cannot support a claim and should be dismissed with prejudice.

> **B. There Are Insufficient Facts Describing Defendant's Alleged Conduct and a Specific Discriminatory Policy or Practice to Support a Plausible Claim.**

This suit alleges that Defendant's employee made a single statement during a single unsolicited phone call about the prospects of a convicted felon passing a background check. Plaintiff's entire case is based on a single statement from Defendant's employee. A plaintiff will not easily be able to show a policy causing a disparate impact based on a one-time decision. *Texas v. Inclusive Communities*, 135 S.Ct. at 2523. "To demonstrate actionable discrimination, a defendant's 'misconduct must be more than isolated to rise to the level of actionable pattern or practice[.]'" *United States v. Fountainbleau Apartments L.P.*, 566 F. Supp. 2d 726, 733 (E.D. Tenn. 2008); *see also*, *Graves v. Ancora Psychiatric Hosp.*, CIV. 10-369

RBK/KMW, 2012 WL 6153428, at *4 (D.N.J. Dec. 11, 2012) (a plaintiff must point to a specific policy, not an incident).

This vague description of Defendant's statement does not plausibly support a conclusion that Defendant has a specific policy which it enforces in a manner that has a "discriminatory effect" against "Hispanic/Latino people." Other than Plaintiff's conclusory, vague interpretation of Defendant's statement, there is no description of what Defendant's statement and the policy actually is.

Does Defendant's policy apply to felony arrests or convictions? Does it apply to both violent and non-violent felonies? Does it apply to property crimes? What is the policy on misdemeanors? Even if there is a blanket denial for felons, does the policy prohibit an applicant from disputing the results of the background check or providing mitigating information? Has this policy been followed by Defendant's staff? Is the policy always followed or have exceptions been made for older or less severe felonies? Are felons prohibited from applying? Did Defendant's employee say that felons may not be approved or could not apply?

These are all unanswered questions which impact the claim. Even as alleged, Plaintiff's call did not obtain information on what Defendant's actual policy is and how it is used in practice. Plaintiff asked one leading yes or no question about whether a convicted felon was likely to pass a background check. If a busy property manager looking to get off the phone gives a frank, off-the-cuff answer to a cold-caller and says that a felony conviction would likely result in a denial, that does not provide sufficient information to support the conclusions Plaintiff has reached about Defendant's policy and practice.

There is no allegation the alleged policy has been implemented against anyone. Plaintiff does not allege that he was denied the ability to apply or that he applied but was denied because of a felony conviction. There are no facts of the specific terms of a policy and its real-world implementation to plausibly conclude that Defendant is discriminating against "Hispanic/Latino" people. Whatever statement Defendant allegedly uttered, Plaintiff makes a conclusory allegation that Defendant's employee said: "a felony criminal record would result in an automatic denial of an applicant seeking to rent the Dwelling." [Complaint, ¶ 8]. At the *prima facie* stage, the plaintiff must point to "the application of a

specific or particular ... practice that has created the disparate impact under attack." *Hardie*, 876 F.3d at 319.

The lack of information of the parameters of Defendant's alleged policy and practice is important to making out a claim for disparate impact because the discriminatory nature of a race-neutral background check policy must be considered on a "case-by-case basis." HUD Guidance, p. 4. Whether a "less discriminatory" background check policy is available "will depend on the particulars of the criminal history policy or practice under challenge." HUD Guidance*,* p. 7*.*

Without additional well-plead facts, it is not plausible that Defendant's employee's statement so closely recited legal elements necessary to support Plaintiff's cause of action for discrimination. Therefore, Defendant moves to have the Complaint dismissed, or in the alternative, moves for a more definite statement pursuant to Rule 12(e) to reasonably allow Defendant to prepare a response.

## Conclusion

For all the foregoing reasons, the Court should enter an order: (1) dismissing the Complaint in its entirety under Rule 12(b)(3) for improper venue, or in the alternative, transfer venue, and (2) dismissing the Complaint under Rule 12(b)(6) for failing to state a claim, or in the alternative, order Plaintiff to plead a more definite statement under Rule 12(e).

Dated: **April 7, 2020**

Respectfully submitted,

ATLAS LAW

/s/ Brian C. Chase

Brian C. Chase, Esq.
Florida Bar No. 0017520
3902 N. Marguerite Street
Tampa, Florida 33603
T: 813.241.8269
F: 813.840.3773
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of April, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Brian C. Chase

Brian C. Chase, Esq.
Florida Bar No. 17520

## SERVICE LIST

| | |
|---|---|
| Jibrael Jarallah Said Hindi | Thomas John Patti, III |
| The Law Offices of Jibrael S. Hindi | Law Offices of Jibrael S. Hindi |
| 110 S.E. 6th Street | 110 S.E. 6th Street |
| Suite 1700 | Suite 1700 |
| Fort Lauderdale, FL 33301 | Fort Lauderdale, FL 33301 |
| jibrael@jibraellaw.com | tom@jibraellaw.com |
| VIA CM/ECF | VIA CM/ECF |